Minute

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 3275 | DATE | 9/28/2001 |
| CASE TITLE | Mamie Sanders vs. Union Pacific Railroad | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Union Pacific's Motion for Summary Judgment is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 28 2001 date docketed | 78 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | 01 SEP 28 AM 10:33 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
SEP 28 2001
Judge Harry D. Leinenweber
U. S. District Court

MAMIE SANDERS,

Plaintiff,

v.

UNION PACIFIC RAILROAD

Defendant.

Case No. 98 C 3275

Judge Harry D. Leinenweber

DOCKETED
SEP 28 2001

## MEMORANDUM OPINION AND ORDER

Mamie Sanders seeks redress from Union Pacific Railroad, her employer, for several alleged wrongs, including race and sex discrimination, harassment, retaliation, conspiracy under Title VII and Section 1985, breach of contract, intentional infliction of emotional distress, commission of hate crimes, and general civil rights violations. Union Pacific now moves for summary judgment.

### BACKGROUND

Sanders, acting *pro se*, filed this case on May 28, 1998, amending her complaint on May 14, 1999. The Court notes that she was appointed counsel on February 3, 2000, but the Court granted her counsel's motion to withdraw upon his representation that a lack of valid issues and interference from Sanders' brother was severely limiting his ability to serve as her attorney.

Proceeding without counsel, Sanders now responds to Union Pacific's motion for summary judgment with assertions that Union

Pacific has violated numerous Federal Rules of Civil Procedure, that it has failed to comply with her discovery requests, and that she has not been allowed the opportunity to cross-examine Union Pacific's witnesses, allegations that the Court has previously determined lack merit. Despite receiving this district's detailed Notice to Pro Se Litigants Opposing Summary Judgment pursuant to LR 56.2, Sanders issues only a general denial of Union Pacific's Local Rule 56.1 Statement of Material Facts, declares her refusal to try this case on paper, and demands that this case proceed to trial by jury. Sanders' *pro se* status does not relieve her of the burdens of the court's procedural requirements. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998). As a result of Sanders' refusal comply with her obligations under LR 56.1, Union Pacific's LR 56.1 Statement of Facts is deemed admitted pursuant to LR 56.1(b)(3)(B). The following summary of facts is taken from that statement.

Sanders, an African American, began working for Chicago North Western Transportation Company ("CNW"), Union Pacific's predecessor corporation, in 1980. Although still a Union Pacific employee, she stopped actively working on July 22, 1996, due to health issues. Prior to taking medical leave, she worked as a coach cleaner and set-up carman, and she had just received a promotion on July 2, 1996.

Union Pacific has monitored Sanders' leave throughout her absence according to its return to work/fitness for duty policy. The policy's purpose is to follow employees' medical conditions during leave to determine when they may safely return to work and to prevent abuse of medical leave. Union Pacific's Health Services Department (the "HSD") administers this policy by requesting up-to-date information from an employee's physician and by requiring the employee to obtain a second opinion by another doctor in cases of extended absence. Employees receive a copy of HSD's Medical Rules setting forth this policy. When HSD requires a second opinion, the employee receives a letter with instructions to be evaluated by a physician chosen by Union Pacific. If the employee fails to comply, a second letter is sent to that employee, with a warning that failure to comply will be considered insubordination. Under company policy, employees may be disciplined for insubordination, up to and including termination.

Sanders claimed to suffer from carpal tunnel syndrome. Under company policy, she was ultimately instructed to be evaluated by a second physician. That physician determined that Sanders could return to work without restrictions. HSD then scheduled Sanders for a return to work physical, and pursuant to company policy, Rickertsen sent her notice of the appointment. Sanders failed to appear for the physical and refused to cooperate. Union Pacific sent her a second letter, warning her that failure to comply with

company policy would result in disciplinary action. She appeared at the office of Union Pacific's regional consulting physician for the appointment, but Sanders refused to be examined and argued that she was not able to return to work. The company scheduled a third appointment and again sent Sanders a letter warning her that failure to be evaluated would be deemed insubordination and acted upon accordingly.

After her third failure to appear or cooperate, a disciplinary hearing was scheduled concerning her alleged insubordination. An investigation into her conduct was postponed several times at the request of Sanders' union representatives. After receiving information that Sanders had made threatening remarks about Rickertsen while receiving psychiatric care and acting with caution given a history of recent fatal shootings on company property, Union Pacific canceled the investigation into Sanders' behavior. The company never disciplined her in any manner. Union Pacific points out that during this same time frame, three male employees, one Caucasian, one Hispanic, and one African American, engaged in similar conduct. In each of those cases, Union Pacific conducted a disciplinary hearing and dismissed each employee according to company policy.

Sanders' complaint also touches upon three other miscellaneous issues. First, from the period October 1995 through March 1997, the withholding of Sanders' state income taxes was inadvertently

dropped due to accounting errors that occurred with various mergers of Union Pacific's predecessor corporations. Numerous employees suffered the same fate, but the company corrected the problems as it became aware of them. Despite receiving a statement of her withholdings twice monthly, Sanders never notified Union Pacific of the problem. Sanders also claims that Union Pacific intentionally interfered with child support payments owed to her by another employee. An investigation revealed, however, that any deficiency suffered by Sanders was due to an error by the court clerk's office. Finally, several of Sanders' claims are based upon allegations that Rickertsen interfered with payment of her benefits by the Railroad Retirement Board, an independent federal agency.

## LEGAL STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). When ruling on a motion for summary judgment, all admissible evidence must be evaluated in the light most favorable to the nonmoving party. *Outlaw v. Newkirk*, 259 F.3d 833, 836 (7th Cir. 2001). However, the nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

The Court recognizes that Sanders proceeds *pro se* and hence follows the "well-known admonition that district courts must construe pro se pleadings liberally." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). "The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Id.* Although the Court is not construing pleadings in the context of a summary judgment motion, the general principle that courts ought to impose a more lenient standard for pro se plaintiffs means that rigid adherence to technicalities is not required. Nevertheless, this does not alter the Court's substantive evaluation of the case.

## **DISCUSSION**

At the outset, the Court notes that Sanders fails to present any evidence supporting her claims as required under FED.R.CIV.P. 56. She has filed several affidavits by acquaintances in which they describe the various maladies faced by Sanders. All relevant assertions contained in the affidavits are clearly based on details told to the affiants by Sanders. Such assertions are inadmissible hearsay and cannot be considered. Sanders has also

attached to her response to Union Pacific's motion for summary judgment a set of interrogatories as sent to her former counsel, but the interrogatories fail to substantiate her claims. With no evidence to support her claims, no rational jury could rule in her favor and summary judgment must be granted. Although summary judgment is clearly warranted on this ground alone, defendant points to a number of other valid grounds for granting summary judgment and are briefly reviewed below.

This is the second case filed by Sanders against Union Pacific. In 1995, Sanders and Nelda Rojas, a co-worker, filed a federal lawsuit against CNW and Rickertsen alleging identical Title VII sex and race discrimination claims. A jury heard the case and returned a verdict for CNW. The Seventh Circuit later affirmed the verdict. *Sanders v. Rickertsen*, 175 F.3d 1020 (7th Cir. 1999).

To the extent that Sanders' current claims are based on facts previously litigated, such claims are barred by the doctrine of res judicata. "[R]es judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." *Perkins v. Board of Trustees of the Univ. of Illinois*, 116 F.3d 235, 236 (7th Cir. 1997). For res judicata to apply three requirements must be met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits. *Roboserve, Inc. v. Kato*

*Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997)(citation omitted). Clearly the three criteria are met here and summary judgment is therefore granted with respect to all such claims.

In this case, however, Sanders alleges new bases for Title VII claims of sex and race discrimination and retaliation. Nevertheless, based on the facts which have been deemed admitted, Sanders fails to establish a prima facie case for sex and race discrimination or for retaliation under the burden-shifting scheme enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The only claims that could be construed to support her allegations involve Union Pacific's actions in attempting to evaluate Sanders' extended leave of absence and her ability to return to work. As the evidence shows, however, that process resulted in no disciplinary action taken. Sanders may be unhappy that Union Pacific monitors its employees for abuse of its medical leave policies, but "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). Unable to meet her burden of establishing a prima facie case under either race or sex discrimination or retaliation, Sanders' claims must fail.

Sanders also alleges that Union Pacific has conspired to deprive her of equal protection of the laws in violation of 42 U.S.C. § 1985. According to Sanders, various Union Pacific employees conspired to harass her and force her to return to work.

Even if Sanders presented evidence of such a scheme, and she does not, the only individuals who could have participated in the alleged scheme are Union Pacific employees. Under the intra-corporate conspiracy doctrine, however, such a scheme is not deemed to be a conspiracy under § 1985 because a corporation cannot conspire with itself. *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 109 (7th Cir. 1991). Accordingly, Sanders' conspiracy claim must also fail.

Union Pacific also contests Sanders' breach of contract claim. Sanders asserts that Union Pacific violated a collective bargaining agreement, and although she does not clearly indicate the manner in which Union Pacific violated the agreement, the Court assumes that Sanders is arguing that it did so by monitoring her medical leave and ability to return to work. This Court lacks jurisdiction to hear this claim, however, as minor disputes such as this must be resolved through the procedures established by the Railway Labor Act. *See* 45 U.S.C. § 153; *Consolidated Rail Corp. v. Railway Labor Executives Assoc.*, 491 U.S. 299 (1989).

Sanders also includes in the litany of alleged wrongs a claim for intentional infliction of emotional distress. Railroad employees may recover for tort injuries arising out of their employment under the Federal Employers' Liability Act ("FELA"). *See New York Central R. Co. v. Winfield*, 244 U.S. 147 (1917). However, railroad workers may not recover for tortious harms unless

there is physical contact or the threat of physical contact. *Hammond v. Terminal R.R. Ass'n. of St. Louis*, 848 F.2d 95, 96 (7th Cir. 1988). Sanders' claim for intentional infliction of emotional distress rests solely on actions not involving physical contact or the threat thereof, and therefore summary judgment is granted with respect to this claim as well.

In Count VIII of her complaint, Sanders seeks to hold Union Pacific accountable for the commission of a hate crime. The Illinois Hate Crimes Act, 720 ILCS 5/12-7.1, requires the commission of a predicate crime against the complainant in order for the complainant to recover civil damages. Sanders makes no such allegation, and therefore this claim fails.

Finally, Sanders' complaint includes a Count entitled "Civil Rights." With respect to the "Civil Rights" count, this claim appears to be duplicative of Sanders' Title VII claims and fails for the reasons stated above.

### CONCLUSION

Based on the foregoing reasons, Union Pacific's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: September 28, 2001